United States District Court
Southern District of Texas
**ENTERED**
November 21, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| PENNY R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:23-CV-00046 |
| | § | |
| MARTIN O'MALLEY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Penny R. brought this action on September 26, 2023 seeking review of the Commissioner's final decision determining she was not disabled. (D.E. 1). The parties have consented to proceed before the undersigned. (D.E. 12). On January 29, 2024, Plaintiff filed a Brief, construed as a Motion for Summary Judgment. (D.E. 16). On February 28, 2024, Defendant filed a Brief, construed as a Cross Motion for Summary Judgment. (D.E. 17). On March 11, 2024, Plaintiff filed a Reply. (D.E. 18). For the reasons below, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED**.

## I.    JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been reassigned to the undersigned. (D.E. 12).

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The burden has been described as more than a scintilla but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment

meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted). The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's Residual Functional Capacity ("RFC"), claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## III.    PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on September 1, 2020 at age 55, alleging disability as of August 15, 2020, due to arthritis, Crohn's disease, chronic back pain, fibromyalgia, plantar fasciitis, depression, anxiety, insomnia, vertigo and bone spurs. (D.E. 10-4, Pages 2-3 and D.E. 10-6, Pages 2-3). Plaintiff has a high school education and past work experience as a pharmacy technician and licensed vocational nurse. (D.E. 10-3, Pages 72 and 75 and D.E. 10-4, Page 67).

After Plaintiff's applications were denied initially and upon reconsideration, at Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on March 22, 2022, at which Plaintiff, who was represented by counsel, a vocational expert ("VE") and two medical experts testified. (D.E. 10-3, Pages 53-84). The ALJ issued an unfavorable decision on April 5, 2022, finding Plaintiff not disabled from August 15, 2020, the alleged onset date, through the date of the decision. (D.E. 10-4, Pages 53-73). The Appeals Council ("AC") remanded the case on October 12, 2022, because the ALJ did "not

adequately consider opinions of psychological state agency consultants." (D.E. 10-4, Pages 74-77). The ALJ conducted a second hearing on February 23, 2023, at which Plaintiff, again represented by counsel, and a vocational expert testified. (D.E. 10-3, Pages 85-114). and issued an unfavorable decision on April 5, 2023, finding Plaintiff not disabled from August 15, 2020, the alleged onset date, through the date of the decision. (D.E. 10-3, Pages 15-42).

The Appeals Council declined Plaintiff's request for review on August 4, 2023, making the ALJ's April 5, 2023 decision final. (D.E. 10-3, Pages 2-4). Plaintiff then filed this action on September 26, 2023, seeking review of the Commissioner's final decision. (D.E. 1).

## IV.    ISSUES PRESENTED

Plaintiff first asserts the "ALJ erred by failing to account for the 'total limiting effects' of Plaintiff's impairments in the RFC." (D.E. 16, Page 2). Specifically, Plaintiff argues the ALJ failed to properly consider her use of cane by not following the standard set forth in SSR 96-9p; failed to discuss the impact of fibromyalgia set forth in SSR 12-2p; failed to account in the RFC for her inability to squat, her moderate limitation in concentration, persistence and pace and her medication side effects; and improperly discounted her own testimony regarding the limitations caused by her impairments. (D.E. 16, Page 4). Plaintiff also asserts the ALJ's finding at Step 4 that she could return to her work as a pharmacy technician "is contrary to law because the job relied upon to deny benefits is not 'past relevant work.'" (D.E. 16, Pages 2 and 4).

## V.    HEARING TESTIMONY AND THE ALJ'S APRIL 5, 2023 DECISION

At the March 22, 2022 hearing before the ALJ, Dr. Subramaniam Krishnamurthi, a physician board certified in internal medicine and cardiology, testified that upon review of Plaintiff's records, Plaintiff was able to lift ten pounds frequently and 20 pounds occasionally; could sit six hours out of eight hours; could stand and walk for six hours out of eight hours; could frequently reach, handle, feel and grasp bilaterally; could not climb ladders, scaffolds or ropes; could occasionally climb ramps and stairs, bend, stoop, crawl, crouch and kneel; should avoid heights and heavy machinery and should no more than occasionally be exposed to dust, fumes and pulmonary irritants.  (D.E. 10-3, Pages 60-61). In rendering his opinion, Dr. Krishnamurthi considered the record as a whole, including that Plaintiff has fibromyalgia, Crohn's disease, degenerative joint disease of the lumbar spine and arthritis in her shoulder.  (D.E. 10-3, Page 58).  He also opined Plaintiff's hand, hip and back pain was likely caused by fibromyalgia.  (D.E. 10-3, Page 59).  Dr. Krishnamurthi further opined Plaintiff "doesn't have to squat and all postural activity are occasional only."  (D.E. 10-3, Page 61).  Dr. Linda Miller, a board certified psychiatrist, testified Plaintiff did not have a severe mental impairment meeting the established criteria. (D.E. 10-3, Pages 64-71).  Dr. Miller stated she did not "really see pain management notes in here or talking about this patient having severe pain that limits her ability to function at work or in her daily life...I didn't see narratives about chronic pain limiting her in terms of her ability to function from the mental health viewpoint."  (D.E. 10-3, Page 68).

Plaintiff testified she worked a desk job in a hospital from 2013 until May 2020 "check[ing] all the charges for the pharmacy and mak[ing] sure they were all correct and check[ing] charting compared to the drugs that they gave and that was what I did all day." (D.E. 10-3, Page 73). Plaintiff testified that during this time she did not have to lift and carry anything more than ten pounds and was seated six hours a day, using a reclining chair, an ice pack and a heating pad for her back pain. (D.E. 10-3, Page 73). Plaintiff testified she stopped working[1] "[b]ecause they moved me back to the pharmacy and I couldn't walk. When I would leave, I would be limping so bad and I was dropping everything with my fingers. The vials, I couldn't hold onto them and looking up and down at the medications, they went maybe feet high [sic], I would get vertigo and it would make me sick to my stomach. And I was throwing up once a month and hospitalized all the time and I just didn't feel like it was worth it." (D.E. 10-3, Pages 73-74). Plaintiff further testified she has pain in her fingers and her joints are enlarged and she "just cannot hold onto things," describing difficulty holding a hairbrush, toothbrush and being unable to "do buttons or laces." (D.E. 10-3, Page 77). She also testified she must frequently use the bathroom, has abdominal pain and cramping, gets nauseated easily and lightheaded, cannot eat and gets dehydrated and has fatigue. (D.E. 10-3, Page 78). Plaintiff testified she frequently missed work in 2018, 2019 and 2020 because of these issues. (D.E. 10-3, Page 79). Plaintiff additionally testified she, because of vertigo, has balance issues and often

---

[1] Plaintiff reported in a Work History Report that she stopped working in August 2020. (D.E. 10-7, Page 26). Her alleged onset date is August 15, 2020. (D.E. 10-6, Pages 2-3).

"the room starts spinning." (D.E. 10-3, Page 79). Plaintiff also described having pain across both of her shoulders and the back of her neck, an inability to turn her neck, lean her head back and an inability to lift her left arm. (D.E. 10-3, Page 80).

The vocational expert ("VE") at this first hearing testified Plaintiff had a "very steady work history" from 2007 to 2020, characterizing her past work as a pharmacy technician and a licensed vocational nurse or practical nurse. (D.E. 10-3, Page 75). The VE further testified that a person of Plaintiff's age, education and work history who could perform light work without climbing ladders, ropes or scaffolds; could occasionally climb stairs and ramps, stoop, kneel, crouch, crawl and balance; could frequently reach and handle; could not work around unprotected heights, dangerous moving machinery or pulmonary irritants excepting household cleaners; would need restroom access; could carry out detailed but not complex instructions; could frequently interact with supervisors, coworkers and the general public; and could respond appropriately to changes in a work setting could perform Plaintiff's past work. (D.E. 10-3, Pages 75-77). The VE testified that limiting this person to occasional bilateral reaching, handling and fingering would preclude Plaintiff's past work. (D.E. 10-3, Page 81).

At the February 23, 2023 hearing before the ALJ, Plaintiff testified that her anxiety had "gotten worse where it's really hard to leave the house. I start walking towards the car and I just get, you know, very anxious and my guts start cramping. My Crohn's disease is just impacting every part of my life. I don't know if that causes anxiety or the anxiety makes it worse." (D.E. 10-3, Page 89). Plaintiff testified that when she was working, she

had several instances where she could not make it the bathroom in time and when she was having a flare, she would wear Depends undergarments.  (D.E. 10-3, Page 112).  Plaintiff further testified she had lost weight, approximately 46 pounds since May of 2018, spending most of her days on the couch or in bed with fatigue.  (D.E. 10-3, Pages 89 and 96-98).  Plaintiff also testified her husband helps her and her mom, who has congestive heart failure and dementia and is on hospice, has lived with them since 2019.  (D.E. 10-3, Pages 90-91).  She testified she fixes her mother simple food for breakfast and lunch and then her "husband comes home and helps with supper…[and] gets her up [if wants to get up]." (D.E. 10-3, Page 91).  Plaintiff testified hospice and a nurse assists her mother one hour in the morning twice a week.  (D.E. 10-3, Pages 92-93).  She further testified she is her mother's guardian, assists her mother, who is primarily bedridden, with using a bed pan and also removes disposable bed pads and that her mother "goes into a nursing home at least one week a month just so they can tend to all the needs she has."  (D.E. 10-2, Pages 93 and 99).[2]  Plaintiff also testified she is not receiving mental health treatment but had been prescribed Xanax as needed and Ambien by her primary care doctor.  (D.E. 10-3, Page 94).  She testified she drives, although it is infrequent.  (D.E. 10-3, Page 94).  Plaintiff further testified she was starting physical therapy the next day to "help with some of the back pain and to get me a little bit stronger."  (D.E. 10-3, Page 95).  She reported she had decreased feeling in her hands and her knuckles were enlarged and painful, causing her to

---

[2] The undersigned notes that when seeking treatment for left shoulder pain in June 2020, Plaintiff reported "[s]he cares for her 90 y.o. mother, so does a lot of lifting.  Tries not to use left arm as much as possibl[e]."  (D.E. 11-2, Page 232).

drop things.  (D.E. 10-3, Page 95).  Plaintiff also testified that she uses a cane to walk, although a cane was not prescribed by her doctor, due to an unsteady gait and balance and weakness in her right leg.  (D.E. 10-3, Pages 96-97 and 102).  She further testified she "walk[s] as little as possible," continues to have nausea, vomiting, dizziness and symptoms related to vertigo.  (D.E. 10-3, Pages 96-98).  Plaintiff also testified she took nausea medication five days a week and if she takes a Xanax, she "can't think very well or focus," it makes her "sleepy and kind of loopy" and causes hearing difficulty.  (D.E. 10-3, Page 102).  Plaintiff testified that when she was performing the customary duties of a pharmacy technician, which included standing and lifting objects weighing 20 pounds or more, she had to lie down multiple times a day to rest and it made her feet numb.  (D.E. 10-3, Page 101).

The VE at the second hearing testified Plaintiff had a "very steady work history" from 2008 to 2020 as a pharmacy technician, performed at sedentary and light levels over the years, and as a licensed vocational nurse, performed at a heavy level.  (D.E, 10-3, Pages 103-104).  The VE further testified that a person of Plaintiff's age, education and work history who could perform light work but could not climb ladders, ropes or scaffolds; could occasionally climb stairs and ramps and stoop, kneel, crouch, crawl and balance; could perform frequent bilateral fingering, handling and reaching in all directions; could not work around unprotected heights or dangerous moving machinery; could work around or with household cleaners but not concentrated pulmonary irritants; would need access to a restroom; could carry out detailed, but not complex instructions and could concentrate for

two hour periods with customary breaks; could not perform fast paced production work; could frequently interact with supervisors, coworkers and the general public; could respond appropriately to changes in a work setting and could accept instructions and make decisions in a work setting could perform Plaintiff's past work as a pharmacy technician both as described and as performed.  (D.E. 10-3, Pages 105-106).  The VE testified that adding the use of a cane would preclude Plaintiff's past work.  (D.E. 10-3, Page 106).

On April 5, 2023, the ALJ determined Plaintiff had not engaged in substantial gainful activity since August 15, 2020.  (D.E. 10-3, Page 21).  The ALJ further determined Plaintiff had the following severe impairments:  fibromyalgia; osteoarthritis of the hands, lumbar and cervical spine, hips and shoulders; gastritis and anxiety.  (D.E. 10-3, Page 21). Acknowledging Plaintiff also alleged vertigo,[3] asthma, plantar fasciitis, bone spurs,

---

[3]As noted by the ALJ "the record reflects no specific treatment related to…vertigo" and tests performed in June 2019 and June 2021 revealed no evidence to support a diagnosis.  (D.E. 10-3, Page 21; D.E. 10-9, Pages 206 and 213 (In June 2019, Plaintiff "reported resolution of 80-90% of her [vertigo] symptoms following the removal of the [earwax] build up during her ENT appointment…[and also] report[ed] that her vertigo is continuing to improve with time.");  (D.E. 11-2, Pages 293-294).  The ALJ further noted that while Dr. Krishnamurthi testified that Plaintiff's vertigo was not severe "as he had not seen much treatment for the impairment in respect to doctor's visits or hospitalizations…he had also considered the impairment in limiting the [Plaintiff] to only occasional postural maneuvers."  (D.E. 10-3, Page 22).

Crohn's disease,[4] Barrett's esophagitis and depression,[5] the ALJ noted these ailments were controlled by prescribed medication; there was no continuing treatment or medication prescribed for treatment; or the objective evidence in the record did not support a diagnosis and therefore, these ailments were not severe.  (D.E. 10-3, Page 21).

The ALJ also determined Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment.  (D.E. 10-3, Page 22). In relevant part, the ALJ determined Plaintiff's impairments did not meet or equal the severity requirements of Listing 1.15 [Disorders of the skeletal spine result in compromise of a nerve root(s); Listing 1.16 [Lumbar spinal stenosis resulting in the compromise of the cauda equina (nerve roots)] or Listing 1.18 [Abnormality of a major joint(s) in any extremity], all of which include consideration of hand-held assistive device.  (D.E. 10-3, Pages 22-23).  The ALJ specifically noted "there is no evidence that the claimant has been prescribed an assistive device" and Plaintiff "has readily reported that she performs household chores, prepares meals and drives."  (D.E. 10-3, Page 23 and D.E. 10-7, Pages

---

[4]The ALJ determined the record "contains little evidence of treatment related to Crohn's disease and Barrett's esophagitis since the alleged onset date; and the claimant has reported only intermittent flare of associated symptoms."  (D.E. 10-3, Page 22; D.E. 10-9, Pages 99-107; D.E. 11-2, Pages 212-246 ; D.E. 11-3, Page 72).  The ALJ also noted that a February 2019 Colonoscopy and a June 2022 CT revealed no evidence of Crohn's disease.  (D.E. 11-3, Page 69 (Noting only diverticulosis without any acute changes of diverticulitis) and D.E. 11-1, Pages 16-17 (Noting only mild diverticulosis).

[5]The ALJ noted that while Plaintiff had alleged limitations associated with depression, there was no evidence she has been prescribed medications for treatment of depression at any time since the alleged onset date.  (D.E. 10-3, Page 21; D.E. 11-2, Page 108; D.E. 11-2, Page 217 and D.E. 11-2, Pages 287-288).

66-67). The ALJ further noted Plaintiff did not meet or equal the severity requirements for Listings 5.06 [Inflammatory Bowel Disease] or 5.08 [Weight loss due to any digestive disorder]. (D.E. 10-3, Page 23). Further, noting there is no Listing for fibromyalgia, the ALJ stated she had "considered the impairment pursuant to Social Security Ruling 12-2p, and has found that alone, or in combination with the [Plaintiff's] other impairments, it does not equal the criteria of a Listing including Listings 1.15 [Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root], 1.16 [Lumbar Spinal Stenosis Resulting in the Compromise of the Cauda Equina], 1.18 [Abnormality of a Major Joint(s) in Any Extremity] or 11.14B [Peripheral Neuropathy]." (D.E. 10-3, Page 23). Further, considering Listing 12.06 [Anxiety and Obsessive-Compulsive Disorders], the ALJ determined Plaintiff's mental impairment does not meet the criteria of Paragraph B[6] or Paragraph C.[7] (D.E. 10-3, Pages 23-25).[8]

---

[6]Paragraph B provides for consideration of the following areas of mental functioning: (1) understanding, remembering and applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; (4) adapting or managing oneself. To satisfy the listing, there must be an "extreme limitation" of one or a "marked limitation" of two.

[7]Paragraph C provides that a mental disorder is "serious and persistent" if there is a medically documented history of at least two years and there is evidence of both (1) ongoing treatment "that diminishes the symptoms and signs of your mental disorder" and (2) there is a "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."

[8]More specifically, at Steps 2 and 3, the ALJ found Plaintiff did not have a limitation in her ability to understand, remember or apply information, citing to mental status evaluations which revealed no ongoing deficits. (D.E. 10-3, Pages 23-24 and D.E. 11-2, Pages 198, 204, 293 and 307). The ALJ further determined Plaintiff had a mild limitation in interacting with others and in adapting or managing herself, noting that while Plaintiff reported problems getting along with others and difficulty caring for her personal needs, the record also showed she visited with family every two months, shops with her husband, socializes with others in person and via phone and texting, interacts with hospice workers caring for her mother several days each week, she showed no behavioral oddities during her consultative examination and treatment records note her having

12 / 33

The ALJ concluded, after considering the entire record, that Plaintiff had the RFC to perform a modified range of light work.  (D.E. 10-3, Page 25).  More specifically, the ALJ determined Plaintiff had the RFC to perform light work but she could not climb ladders, ropes or scaffolds; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch and crawl; could frequently finger, handle and reach in all directions, bilaterally; could not work around unprotected heights or dangerous moving machinery or perform commercial driving; could not use bilateral foot controls; could work with or around household cleaners but not concentrated pulmonary irritants; needed ready access (proximity) to a restroom; could understand, remember and apply information in order to carry out detailed, but not complex instructions; could concentrate and keep pace and persist for two hour periods with customary breaks in an eight hour workday; could perform no fast-paced production work but can have an end of day quota; could frequently interact with supervisors, coworkers and the general public; could respond appropriately to changes in the work setting; and could accept instructions and make decisions in a work setting.  (D.E. 10-3, Page 25).

---

appropriate affect and demeanor, normal thought and perception, she performs household chores and drives and she cares for her mother with assistance.  (D.E. 10-3, Page 24; D.E. 10-7, Pages 38-41 and 65-69; and D.E. 11-2, Pages 108 and 194-200).  Lastly, the ALJ found Plaintiff had a moderate limitation in her ability to concentrate, persist or maintain pace, citing to Plaintiff's history of pain and a consultative psychological evaluation while also noting again that Plaintiff assists with the care of her mother, manages finances, performs household chores, drives and shops.  (D.E. 10-3, Page 24; D.E. 10-7, Pages 38-42 and D.E. 11-2, Page 198).

## VI.    DISCUSSION

### A. RFC

An RFC is an assessment, based on all relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite impairments.  20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) ("RFC involves both exertional and non-exertional factors.")  RFC refers to the most a claimant is able to do despite physical and mental limitations.  20 C.F.R. § 404.1545(a).  The ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991) ("Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment" and considerable deference is given to an ALJ's determination of that pain's disabling nature) (citations omitted).  However, the ALJ is not required to incorporate limitations in the RFC that are not supported in the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence…" (citation omitted).   "A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability.  Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005).  "The mere presence of some impairment is not disabling per se.  Plaintiff must show that she was so functionally impaired by her [disability] that she was precluded from engaging in any substantial gainful activity." *Id*. (citations

omitted); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (An "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.")

Additionally, for all claims filed on or after March 27, 2017, ALJs are no longer required to give controlling weight to a treating physician's opinion as previously mandated. 20 C.F.R. § 404.1520c. Because Plaintiff filed her application for disability insurance benefits after this time, the new rule applies which provides the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the factors outlined in the rule, the most important of which are supportability[9] and consistency.[10] *Id.* at § 404.1520c(b)(2). While "[t]here have never been formalistic rules governing how an ALJ must articulate his decision, [a]t a minimum, the ALJ's explanation must permit meaningful judicial review" of the

---

[9]For supportability, the regulations state "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(1).

[10]For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative findings(s) will be." 20 C.F.R. § 404.1520c(2).

supportability and consistency factors. *Walsh v. Comm'r of Soc. Sec.*, No. 4:21-cv-552-O-BP, 2022 WL 2874710, at *5 (N.D. Tex. July 7, 2022) (citations omitted).[11]

Plaintiff first alleges the ALJ's RFC determination is deficient because the ALJ "failed to consider the total limiting effects of Plaintiff's impairments by (1) making up a durational requirement for use of a cane rather than applying SSR 96-9p; (2) failing to discuss the impact of fibromyalgia as set forth in SSR 12-2p; (3) failing to account for her inability to squat; and (4) failing to account for her moderate limitation in concentration, persistence and pace and for her medication side effects; and (5) improperly discrediting her testimony about her impairments. (D.E. 16, Pages 4-14).

---

[11]Whether an ALJ's analysis constitutes a sufficient explanation of supportability and consistency is "whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett v. Kijakazi*, No. 4:20-cv-4002, 2021 WL 5545233, at *3-4 (S.D. Tex. Nov. 26, 2021) (citation omitted) (Remanding case because the ALJ rejected not only the opinion of a treating physician for purposes of assessing the plaintiff's RFC but also rejected that same treating physician's underlying primary medical diagnosis that the plaintiff suffered from fibromyalgia based on an incorrect interpretation of the record). An ALJ must articulate how supportability and consistency were considered. *Howen v. Saul*, No. H-19-4358, 2021 WL 1169331, at *6-7 (S.D. Tex. Mar. 25, 2021) (While the ALJ stated he considered an opinion and then incorporated even more restrictive limitations into the RFC, the RFC was in fact not more limited than the suggested RFC and therefore, remand was appropriate).

However, these words need not be expressly used as the Fifth Circuit has held "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Ranson v. Comm'r of Soc. Sec.*, No. 4:21-cv-157-JMV, 2022 WL 2438840, at *4 (N.D. Miss. July 5, 2022) (citing *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) ("Remand is only appropriate 'where there is no indication the ALJ applied the correct standard'") (citation omitted).

### 1.  Use of a Cane

Plaintiff argues the ALJ failed to properly consider her use of a cane, which she asserts is needed because of limitations caused by degenerative disc disease and fibromyalgia, when determining her RFC.  Specifically, Plaintiff argues the ALJ incorrectly determined Plaintiff must have been using the cane continuously for 12 months or longer.  However, upon review of the ALJ's decision and the record as a whole, the undersigned finds the ALJ's decision that a cane was not medically necessary is supported by substantial evidence.

The ALJ determined "[t]he record does not document any objective diagnostic or clinical findings that would preclude the perform of light work," noting Plaintiff's "osteoarthritis has been treated conservatively with medications, intermittent injections, and chiropractic modalities; and there is no evidence that she has experienced any exacerbation of symptoms in association with fibromyalgia or osteoarthritis, including pain, that has resulted in the need for hospitalization, emergency treatment or surgical intervention."  (D.E. 10-3, Page 30).  Discussing the inconsistent evidence regarding Plaintiff's ability to ambulate with and without a cane, the ALJ further noted Plaintiff heavily relied on her subjective reports to medical providers to support her assertion that she required the use of a cane for the past two years while "her treating sources have reported no ongoing use of an assistive device or ongoing dysfunction of [her] gait."  (D.E. 10-3, Page 30).  Specifically, the ALJ noted "the record provides subjective, not objective, reports by the claimant of her on and off use of a cane for ambulation."  (D.E. 10-3, Page

37 and D.E. 11-3, Page 59).  The ALJ noted, except for an internal medical consultation examination provided by Dr. White in December 2020, Plaintiff's other physical examinations "do not document the use of a cane or other assistive device," and that Dr. White noted Plaintiff could move around the exam room without the cane, had a steady symmetric gait, her deep tendon reflexes were normal, no muscle weakness or atrophy was appreciated, she was able to arise from a sitting position without assistance, she had no difficulty getting up and down from the exam table, she was not able to walk on heels but was able to walk on her toes with ease and tandem walking was normal and she could stand, but not hop, on one foot bilaterally.  (D.E. 10-3, Pages 30 and 37 and D.E. 11-2, Pages 201-205). When examined by Dr. Arun Jain in August 2021, Plaintiff was noted as ambulating normally and physical examinations in June 2022, August 2022 and early November 2022 do not document Plaintiff using an assistive device at the visits.  (D.E. 10-3, Pages 30 and 37-38; D.E. 11-2, Page 293 and D.E. 11-3, Pages 59-67).  Additionally, the ALJ noted Plaintiff "testified that she had continued to take care of her bedridden mother, which includes changing a bed pan and removing disposable bed pads, when necessary, which would require her to be able to handle, finger, feel, and lift her mother off the bed pan and move her to remove the disposable bed sheet. The use of a cane or walker would not reasonably be used when doing these activities, which she has done for the past one-and one half years (hearing testimony)."  (D.E. 10-3, Pages 30 and 38; D.E. 10-7, Pages 38, 47 and 65).  The ALJ also noted that on November 28, 2022, Plaintiff was noted for the first time to be "utilizing a cane in clinic due to pain and unsteady gait."  (D.E.

11-4, Page 2). Further, the ALJ considered Plaintiff's January 19, 2023 treatment note by Dr. Chau Uong, to whom Plaintiff had been referred for pain management, which noted Plaintiff was "currently walking with a cane due to unsteady balance and gait." (D.E. 11-4, Pages 6 and 9). Dr. Uong noted mostly minimal to mild/moderate findings in Plaintiff's spine MRIs, although he also noted "severe recess stenosis and compression of the right L5 nerve root as it traverses the subarticular recess." (D.E. 11-4, Page 9). Plaintiff was noted as having previous injections in 2018 which were effective for a year. (D.E. 11-4, Page 9). Plaintiff was advised to receive an additional injection and Dr. Uong opined Plaintiff "will likely be able to benefit more from physical therapy after she has relief with the injection." (D.E. 11-4, Pages 9-10). The ALJ concluded that "[b]ased on the longitudinal objective record, her activities of daily living and her conservative treatment, the undersigned finds claimant has not been required to use an assistive device for 12-continuous months and beginning in November 2022, when she was first using a cane in the treatment notes, she has been referred to pain management and her back symptoms are expected to improve with physical therapy and other conservative measures." (D.E. 10-3, Page 38).

While Social Security regulations recognize the use of a cane can impact an individual's ability to perform certain activities, such as lifting, carrying, pushing and pulling, an ALJ should consider the use of a cane, or other assistive device, in the RFC assessment only if the device is medically necessary. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need

for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed (i.e. whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). An ALJ is justified in finding that an assistive device is not medically necessary where medical records show inconsistent use of the device. *Arnold II v. Comm'r of Soc. Sec.*, No. 4:22-cv-4240, 2024 WL 23179, at *3-4 (S.D. Tex. Jan. 2, 2004) (citations omitted). Here, the ALJ correctly noted that Plaintiff heavily relies on her subjective reports to medical providers and her hearing testimony to support her use of a cane. However, Plaintiff's statements and testimony are not medical documentation and a provider's reference that Plaintiff was using a cane at an appointment does not establish that one is medically necessary, as none describe duration, distance and terrain as required. SSR 96-9p, 1996 WL 374185, at *7; *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference); *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (Subjective complaints must be corroborated, at least in part, by objective medical findings) (citations omitted). Further, while a prescription is not "necessarily dispositive of medical necessity," the ALJ must still consider the particular facts of the case. *Duenes v. Kijakazi*, No. 4:20-cv-2629, 2022 WL 19614, at *7 (S.D. Tex. Jan. 3, 2022) (citation omitted). While the record documents Plaintiff's use of a cane at the end of 2022 and beginning of 2023 at certain medical appointments, the ALJ determined Plaintiff had failed

to provide evidence to establish a basis to determine her cane was medically necessary, highlighting many instances where Plaintiff did not use a cane or any other assistive device to ambulate and that her latest treatment records indicated she would improve with physical therapy after receiving injections, as discussed above. Further, the ALJ points to Plaintiff's "wide array of activities of daily living," including mowing the lawn on a riding mower, washing and folding laundry, cooking and taking care of her mother. (D.E. 10-3, Pages 33 and 38). Because the records are inconsistent as to whether Plaintiff used a cane to ambulate on a regular basis and do not show a cane was medically necessary, remand is not required on this basis as the ALJ's finding is supported and consistent with substantial evidence in the record and is further consistent with her credibility determination, regardless of whether the ALJ appropriately listed a 12 month duration. *Stewart v. Colvin*, No. 1:12-cv-39-BL, 2013 WL 1979738, at *5 (N.D. Tex. May 14, 2013) (Where the record did not contain evidence regarding the medical basis for a cane and there was "no physician's report regarding specific medical restrictions requiring [Plaintiff] to use an assistive device," there was no error when the ALJ did not incorporate the use of a cane in Plaintiff's RFC).

### 2. Fibromyalgia

Plaintiff next asserts the ALJ failed to discuss the impact of Plaintiff's fibromyalgia as set forth in SSR 12-2p. The undersigned finds Plaintiff's argument to be without merit.

While fibromyalgia is not a listed impairment, the SSA issued Social Security Ruling ("SSR") 12-2p to clarify that fibromyalgia "can be a basis for a finding of a

disability" and to provide guidance on how an ALJ determines whether a claimant has a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Fibromyalgia can provide the basis for a finding of disability when appropriate medical evidence establishes the claimant has (1) a history of widespread pain in the back and all four quadrants of the body; (2) evidence, such as lab tests, that could rule out other disorders which could account for the claimant's symptoms and signs; and (3) either (a) at least 11 of 18 tender point sites on physical examination or (b) repeated manifestations of six or more symptoms or co-occurring conditions, especially fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder or irritable bowel syndrome. SSR 12-2p, 2012 WL 3104869, at *3. Further, because fibromyalgia is not a listed impairment, ALJs should "determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis) or whether it medically equals a listing in combination with at least one other medically determinable impairment." *Id*. at *6.

In her opinion, the ALJ determined Plaintiff's fibromyalgia was a severe impairment. (D.E. 10-3, Page 21). The ALJ further correctly acknowledged "[t]here is no listing for fibromyalgia. The undersigned, however, has considered the impairment pursuant to Social Security Ruling 12-2p, and has found that alone, or in combination with the claimant's other impairments, it does not equal the criteria of a Listing including Listings 1.15, 1.16, 1.18, or 11.14B." (D.E. 10-3, Page 23). When determining Plaintiff's RFC, the ALJ considered Plaintiff's hearing testimony and reported limitations and

concluded the "record documents some impairments that could reasonably cause the types of symptoms that the claimant alleges, but not to the general extent to which she alleges them. Therefore, the undersigned finds that the claimant's subjective complaints to be partially consistent with the evidence of record." (D.E. 10-3, Page 26). The ALJ thoroughly considered the record, including Plaintiff's treatment records, objective testing, reported daily activities and her complaints of pain and fatigue as well as the opinions of multiple consultative examiners. (D.E. 10-3, Pages 26-38). The ALJ determined "there is no evidence that [Plaintiff] has experienced an exacerbation of symptoms in association with fibromyalgia or osteoarthritis, including pain, that has resulted in the need for hospitalization, emergency treatment or surgical intervention. Examinations have also revealed no tender points, ongoing neurological deficits or ongoing dysfunction of gait." (D.E. 10-3, Page 30). The ALJ further noted she had considered Plaintiff's subjective pain complaints when limiting Plaintiff's activities in the RFC related to climbing and heights as well as postural limitations. (D.E. 10-3, Page 30). The ALJ further discussed why she determined Plaintiff had the ability to frequently finger, handle and reach in all directions, regardless of Plaintiff's testimony that she was unable to do so, citing to treating and examining sources which "revealed no ongoing loss of motion, swelling, tenderness, or motor deficits of the claimant's wrists, hands or fingers," objective testing showing mild impairments and her reported daily activities, including that she cares for her elderly mother. (D.E. 10-3, Pages 30-31). Additionally, the ALJ discussed Dr. Krishnamurthi's testimony about Plaintiff's RFC, including that he had considered Plaintiff's fibromyalgia

when rendering his opinion about Plaintiff's limitations.  (D.E. 10-3, Pages 32-33).  The

ALJ determined Dr. Krishnamurthi's assessment to be persuasive and the ALJ's RFC is

consistent with Dr. Krishnamurthi's opinion.  (D.E. 10-3, Page 33).  The ALJ also

discussed Plaintiff's reported pain, fatigue and mental symptoms to her mental health

providers when determining Plaintiff's RFC.  (D.E. 10-3, Pages 31-32).  In short, it is

evident the ALJ considered Plaintiff's fibromyalgia symptoms at each step, regardless of

whether SSR 12-2p was mentioned repeatedly in the decision.  Overall, the ALJ assessed

Plaintiff's fibromyalgia as a severe impairment specifically citing SSR 12-2p,[12] then

appropriately considered whether it met or equaled a listing alone or in combination and

then incorporated limitations into the RFC that she determined were consistent with the

record, including, but not limited to, Plaintiff's fibromyalgia symptoms, both physical and

mental and including her subjective reports of pain, fatigue and her other alleged

limitations.  *Chambliss*, 269 F.3d at 522; *Harrell*, 862 F.2d at 481.  Accordingly, having

reviewed the record and for the reasons stated above, substantial evidence supports the

ALJ's determination.

---

[12]The regulations do not require an ALJ to evaluate fibromyalgia only under Listing 14.09D or
under any particular listing.  Rather, an ALJ is required to compare a claimant's findings related
to fibromyalgia to those for "closely analogous listed impairments" to determine whether those
findings were of equal medical significance to those of a listed impairment.  20 C.F.R. §
404.1526(b)(2); SSR 12-2p, 2012 WL 3104869, at *6; *Waterman v. U.S. Comm'r, Soc. Sec.
Admin.*, No. 6:15-cv-2699, 2017 WL 1238042, at *10 (W.D. La. Jan. 18, 2017) (Holding the ALJ
erred when he "did not evaluate the claimant's symptoms in light of Listing 14.09(D) or in light
of any other listing, nor did the ALJ properly evaluate the claimant's symptoms under SSR 12-2p
or even mention the regulation in his ruling.")  The ALJ in this case clearly did so.

### 3. Squatting; Concentration, Persistence and Pace; Medication Side Effects; Plaintiff's Testimony

Plaintiff next briefly argues the ALJ failed to account for several other limitations in the RFC and also improperly discredited Plaintiff's testimony. First, Plaintiff asserts the ALJ failed to account for her inability to squat, citing to Dr. Krishnamurthi's testimony that his opinion about Plaintiff's abilities was consistent with Dr. Jain's report[13] because Plaintiff "doesn't have to squat and all postural activity are occasional only" and she can stand and walk six hours out of eight hours in a day. (D.E. 10-3, Page 61). Considering Dr. Jain's report, the ALJ noted Dr. Jain found Plaintiff "was unable to squat or walk on her toes and heels. The claimant, however, had no sensory deficits and there were no reports of any deficits in motor strength. The claimant's gait was also normal." (D.E. 10-3, Page 28). Discussing Dr. Krishnamurthi's testimony, the ALJ noted he "testified that he had seen Dr. Jain's statements regarding the claimant having difficulty squatting and

---

[13]On August 4, 2021, Dr. Jain performed a consultative examination. (D.E. 11-2, Pages 290-301). He noted Plaintiff was ambulating normally, had good judgment, normal mood and affect, was active and alert with normal recent memory and was oriented to time, place and person. (D.E. 11-2, Page 293). He further noted no hearing loss, no abdominal issues and normal neurologic findings. (D.E. 11-2, Page 293). Plaintiff's motor strength and tone were normal, her hands had no swelling and her fine finger movements, grip strength, and ability to push, pull and grab were within normal limits. (D.E. 11-2, Page 293). Further, there was no swelling in her wrists, elbows, shoulders, feet, ankles, knees or hips. (D.E. 11-2, Page 293). Dr. Jain further noted Plaintiff's bilateral straight leg raising test was normal. (D.E. 11-2, Page 294). Dr. Jain also noted "Heal walking, Toe walking and Squatting is unable to do." (D.E. 11-2, Page 294). He assessed Plaintiff as having "lower back pain most likely due to degenerative disease of the lumbosacral joints with lumbar radiculopathy" as well as "pain in her knees and hips most likely due to degenerative joint disease or synovitis due to her Crohn's disease." (D.E. 11-2, Page 294). He further opined Plaintiff's "symptoms are consistent with fibromyalgia" and "consistent with poorly-controlled benign positional vertigo." (D.E. 11-2, Page 294). Dr. Jain also concluded Plaintiff's insomnia and anxiety symptoms were stable with medication, specifically Xanax and Ambien. (D.E. 11-2, Page 294).

walking on her toes and heels and had considered the findings in limiting the claimant to only occasional postural maneuvers." (D.E. 10-3, Pages 32-33). The ALJ found Dr. Krishnamurthi's assessment to be persuasive as it was consistent with, and supported by, the more fully developed record, including the opinions of state agency medical consultants as well as Plaintiff's activities of daily living, including "mowing the lawn on a riding mower, washing and folding laundry, cook[ing] and tak[ing] care of her mother, who requires help toileting, including the use of the bed pan and changing her adult diapers." (D.E. 10-3, Page 33). Here, the ALJ expressly considered the record, including the "imaging of the claimant's extremities and spine, her subjective pain complaints, records reflecting intermittent treatment for gastritis, and the claimant's non-severe vertigo" in limiting her activities in the RFC. (D.E. 10-3, Page 30). It is clear the ALJ considered both Drs. Jain and Krishnamurthi's opinions when restricting Plaintiff to occasional stooping, kneeling, crouching, crawling and balancing and appropriately relied upon the VE's testimony that a person with this RFC could perform Plaintiff's past work. However, even assuming it was an error for the ALJ to fail to specifically include a squatting limitation in the RFC determination, any error would be harmless on the facts of this case as the job duties of Plaintiff's past work as a pharmacy technician, both as she performed them and as generally performed in the economy, do not require squatting or crouching. U.S. Dep't of Labor, *Dictionary of Occupational Titles* ("DOT") No. 074-382-010, 1991 WL 646728 (Pharmacy Technician); *Smith v. Kijakazi*, No. 4:21-cv-580, 2022 WL 1443685, at *2 (S.D. Tex. May 6, 2022) (Determining any purported error regarding

exposure to irritants was harmless because none of the jobs identified at Step Five included any exposure to irritants) (citations omitted).

Plaintiff next argues the ALJ did not appropriately consider her chronic pain when determining her ability to concentrate. The undersigned finds this argument to be without merit. The ALJ determined at Step Three that Plaintiff has a moderate limitation in her ability to concentrate, persist and maintain pace, noting that during a December 2020 consultative psychological evaluation she "displayed some deficits of concentration" and that Plaintiff herself also "alleged limitations in her ability to sustain attention and complete tasks." (D.E. 10-3, Pages 24 and 31). The ALJ further discussed Plaintiff's ability to perform daily activities, including caring for her mother, preparing meals, performing household chores, driving and managing finances. Ultimately, the ALJ considered the record, specifically noting Plaintiff's "history of pain," finding a moderate limitation. (D.E. 10-3, Page 24). When determining Plaintiff's RFC, the ALJ again discussed the December 2020 consultative psychological examination but also noted that during the December 2020 consultative internal medicine examination, Plaintiff was noted as having "clear thought processes as well as normal memory and good concentration." (D.E. 10-3, Page 31 and D.E. 11-2, Page 204). The ALJ further noted that during another consultative internal medicine examination in May 2021, Plaintiff was "alert and well oriented and displayed a normal mood and affect, as well as normal memory for recent events" and that during a June 2021 consultative psychological evaluation, Plaintiff's memory and concentration were found to be normal. (D.E. 10-3, Pages 31-32 and 35-37 and D.E. 11-

es the opinions of the non-examining

2, Pages 293 and 307-308). The ALJ also considered the opinions of the non-examining consultative examiners in detail who opined Plaintiff had little to no deficit in these areas. (D.E. 10-3, Pages 33-37). After considering all of this evidence as described above and in the decision, the ALJ then limited Plaintiff to concentrating, keeping pace and persisting for two hour periods with customary breaks during an eight hour workday, thereby accounting for any impairment caused by Plaintiff's ailments, including pain. (D.E. 10-3, Page 25).

Plaintiff's last argues the ALJ failed to discuss Plaintiff's alleged side effects from her medication, specifically Xanax and Tramadol. Plaintiff also argues the ALJ improperly discredited her testimony. In support, Plaintiff cites to her hearing testimony that if she takes a Xanax, she "can't think very well or focus. It generally just makes me really sleepy and kind of loopy. And the Tramadol for the pain, it can make me feel more anxious. It makes me fell like my heart is racing and, like, weak. Like, I have to just lay down. And it makes my ears feel like they're clogged up. It's a strange side effect. I know that I feel like I can't hear very well." (D.E. 10-3, Page 102). However, the ALJ specifically discussed this testimony, noting "[t]he claimant also testified to having side effects of Xanax and Tramadol including an inability to think or focus well, sleepiness/loopy, anxiousness, weakness and feeling that her ears are clogging up." (D.E. 10-3, Page 26). The ALJ determined the "record documents some impairments that could reasonably cause the types of symptoms that claimant alleges, but not to the general extent to which she alleges them," finding Plaintiff's "subjective complaints to be partially consistent with the

evidence of record." (D.E. 10-3, Page 26).  The ALJ then thoroughly discussed the record. (D.E. 10-3, Pages 26-38).  Upon review of the record and the ALJ's decision, the undersigned finds the ALJ did not "ignore entire lines of contrary evidence" or "simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."  (D.E. 16, Page 14).

Again, it is the task of the ALJ to weigh the evidence.  *Hames*, 707 F.2d at 165; *Chambliss*, 269 F.3d at 523.  "It is not the place of this Court to reweigh the evidence, or try the issue de novo, or substitute its judgment…[i]f supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed."  *Id.*  Upon review, the ALJ's determination is based on substantial evidence.  The ALJ acted within her discretion in interpreting the evidence before her.  Even though the record illustrates Plaintiff suffers from several severe impairments, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not prevent her from performing light work as identified in the RFC during the period at issue.  The ALJ, who questioned the Plaintiff at length, and thoroughly reviewed her treatment records and the multiple consultative examinations, based her determination in part on Plaintiff's own reports and testimony regarding her ability to perform certain tasks despite having claims of limitations as well as the medical evidence.  Plaintiff's arguments request the Court to reweigh the evidence, try the issues de novo, or substitute the Court's judgment for that of the Secretary, all of which it cannot do.  *Greenspan*, 38 F.3d at 236.

### B. Past Relevant Work

Past relevant work refers to work performed "within the last 15 years, lasted long enough for the person to learn to do it and was substantial gainful activity." *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014) (citations omitted). "A claimant may retain the capacity to perform her past relevant work either as he or she actual performed it or as ordinarily required by employers throughout the national economy." *Copeland*, 771 F.3d at 924 (citation and internal quotations omitted). If a claimant's past "work is done under special conditions,"[14] the ALJ may find the work "does not show that [the claimant is] able to do substantial gainful activity." 20 C.F.R. § 404.1573(c). Additionally, if a Plaintiff stops working after the removal of special conditions related to an impairment, an ALJ may also find the work does not show a claimant is able to do substantial gainful activity. *Id*. "However, work done under special conditions may show that [the claimant has] the necessary skills and ability to work at the substantial gainful activity level." *Id*. Additionally, an ALJ will consider a claimant's earnings when evaluating work activity for substantial gainful activity purposes and, generally, if a claimant worked for substantial earnings, the ALJ will find a claimant able to do substantial gainful activity. *Id*. at §

---

[14]Examples of special conditions, as detailed by both parties, include, but are not limited to, whether the Plaintiff required and received special assistance from other employees to perform job duties; worked irregular hours or had frequent rest periods; was provided special equipment or assigned work suited to an impairment; was able to work only because of specially arranged circumstances; was permitted to work at a lower standard of productivity or efficiency; and was given the opportunity to work despite an impairment because of a family relationship. 20 C.F.R. § 404.1573(c).

§404.1573 and 404.1574. The claimant may rebut this presumption with evidence of special conditions under which claimant performed the work. *Id*.

Plaintiff asserts that "even if there were no error in the ALJs RFC determination, the ALJ did not conduct a proper analysis of Plaintiff's past relevant work." (D.E. 16, Page 14. Plaintiff asserts "the ALJ completely failed to perform the required analysis regarding the 'special conditions' under which this job was performed, pursuant to § 404.1573." (D.E. 16, Page 15). She argues that her "father in law was on the board of directors for the hospital where she worked, [so] she was given accommodations on the job that allowed her to continue working despite her impairments," including that "she was assigned only sedentary work at a desk, did not have to do any lifting, had a chair that would recline back when had back pain, was allowed to use an ice pack and a heating paid, and was allowed to take time off work as needed due to her medical conditions." (D.E. 10-2, Pages 16, 72-73, 79 and 99). Plaintiff asserts that once these accommodations were removed and she was required to return to standard pharmacy technician duties, she "was limping regularly, dropping things and ended up having to leave her job." (D.E. 16, Page 16).

The ALJ determined that "[b]ased on the testimony of the vocational expert, the job duties described in the DOT for the pharmacy technician job and the claimant's description of her job duties as a pharmacy technician…[Plaintiff] is able to perform the job duties as a pharmacy technician, both as she performed them and as generally performed in the economy." (D.E. 10-3, Page 40). Considering the VE's testimony at the supplemental hearing, the ALJ noted that "[i]n response to a hypothetical that included the claimant's

age, education, past relevant work experience and residual functional capacity…[the VE testified] such an individual would be able to perform the claimant's past work as a pharmacy technician, both as performed and as generally performed." (D.E. 10-3, Page 38). The ALJ also discussed that Plaintiff received accommodations at her work from 2013 until May 2020, including performing only desk work, sitting for six hours, no significant lifting/carrying and no filling orders, further noting Plaintiff returned to customary duties in May 2020, which included standing and lifting, and her "detailed earnings records reflect that she performed the job at a level indicative of substantial gainful activity [and] based on the claimant's reports, her work as a pharmacy technician satisfies the duration and substantial gainful activity requirements to be considered past relevant work." (D.E. 10-3, Page 39 and D.E. 10-6, Pages 17-18). The ALJ also reviewed both the DOT job description for a pharmacy technician and the job duties as described by Plaintiff in her Work History Report when making this determination. (D.E. 10-3, Pages 39-40 and D.E. 10-7, Pages 26-27). In short, contrary to Plaintiff's assertions, the ALJ, in addition to addressing her earnings, the VE's testimony and the DOT job description, also considered her testimony regarding the accommodations made for her to perform her job duties prior to May 2020 as well as her Work Report before noting Plaintiff had returned to her regular duties without any accommodations making substantial earnings and concluding she could perform her past relevant work both as performed and generally performed. Therefore, the undersigned finds no reason for remand.

**VII.   CONCLUSION**

For the reasons above, Plaintiff's Motion for Summary Judgment is **DENIED** (D.E.

16), Defendant's Motion for Summary Judgment is **GRANTED** (D.E. 17) and this case is

**DISMISSED**.


ORDERED on November 21, 2024.

Jason B. Libby
United States Magistrate Judge